**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE CORP.** | ) | **CASE NO.3:04CV7586** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **GREG MILLER, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Federal Deposit Insurance Corp.'s ("FDIC") Motion for Summary Judgment against Defendants Miller Brother Stables ("MBS"), Jeff L. Miller d/b/a Jeff Miller Stables, and Jeffrey L. and Lori Miller. For the following reasons, the Court grants, in part, and denies, in part, Plaintiff's Motion.

Plaintiff FDIC moves for summary judgment against Defendants MBS, Jeff L. Miller d/b/a Jeff Miller Stables, and Jeffrey L. and Lori Miller on its cause of action for unjust enrichment/quasi-contract under Ohio law.

1

## **FACTS**

Mark Steven Miller ("Steve Miller") was Chief Executive Officer and Executive Vice President of Oakwood Deposit Bank Company ("ODBC") from late 1980 until February 1, 2002. On February 1, 2002, ODBC was closed by the Ohio Superintendent of Financial Institutions and FDIC was appointed the Receiver for ODBC. Steve Miller was indicted for Money Laundering and Embezzlement of ODBC funds and pled guilty in United States District Court, Northern District of Ohio Case No. 3:02-CR-0722, on September 5, 2003. Steve Miller was sentenced to one hundred sixty-eight months in federal prison and ordered to pay more than forty-eight million dollars in restitution.

Sometime in the early 1990s, Steve and Jeffrey L. Miller formed MBS, a general partnership formed under Ohio law, for the purpose of breeding, training and racing standardbred horses. Both Steve and Jeff Miller were equal partners. MBS formed a general partnership with Eternal Camnation Stables ("ECS"), whose partners included James L. Hardesty and Dorothy Miller. The sole purpose of ECS was the training and racing of one horse, Eternal Camnation. MBS owns forty-seven and one-half percent interest in ECS. At the time of the failure of ODBC, MBS's value exceeded one million dollars. Jeff Miller is married to Lori Miller. Jeff Miller owns a sole proprietorship named Jeff Miller Stables ("JMS"). In 2002, the assets of MBS were transferred to JMS.

Plaintiff alleges MBS received $1,722,223.00 dollars of embezzled funds from Steve Miller, and further alleges MBS also received the benefit of $182,117.00 of embezzled funds, paid to third parties on behalf of MBS, bringing the total amount of embezzled funds used for the benefit of MBS to $1,904,340.00.

Plaintiff alleges Jeff and Lori Miller received an additional $128,340.00 of funds, embezzled by Steve Miller from ODBC, used to purchase 55.8 acres of land in Paulding County, Ohio. Jeff and Lori Miller co-owned the property with Steve and Janet Miller. Jeff and Lori Miller also allegedly received the benefit of $65,000 of embezzled funds used to purchase 52.85 acres of land in Paulding County, Ohio for MBS. Plaintiff further alleges the transfer of MBS assets to JMS was without consideration. Finally, Plaintiff contends none of the nearly $2,000,000.00 embezzled by Steve Miller from ODBC and paid to, or for the benefit of Jeff Miller, JMS, Lori Miller and/or MBS has ever been repaid to ODBC.

Therefore, Plaintiff seeks judgment as a matter of law against MBS and Jeff Miller as a general partner of MBS in the amount of $1,904,340.00, jointly and severally; Jeff Miller d/b/a JMS in an amount to be determined representing the value of the MBS partnership at the time of the transfer of substantially all of its assets to JMS; Jeff and Lori Miller for $65,000.00 jointly and severally on the 52.85 acres of land in Paulding County; and Jeff and Lori Miller for $128,340.00 jointly and severally on the 55.8 acres of land in Paulding County, Ohio.

## **STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

3

> together with the affidavits, if any," which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleadings, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial. If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n.,* 78 F.3d 1079, 1087 (6th Circ. 1996). "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986).

### **Unjust Enrichment**

To prevail on a claim for unjust enrichment, plaintiff must prove: (1) the plaintiff

4

conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for him to retain that benefit without payment. See *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183. Also, not only must plaintiff have suffered a loss, but the defendant must receive a gain. *Id.*

## ANALYSIS

### Steve Miller's affidavit

Defendants challenge the affidavit of Steve Miller to the extent that it purports to offer testimony, based on personal knowledge, that is clearly outside his personal knowledge. The Court notes Defendants have not filed a Motion to Strike Steve Miller's affidavit and therefore, there is no proper motion before the Court. However, the Court will address the issues raised. Defendants ask this Court to take judicial notice of the docket in *United States v. Miller,* No. 3:02CR0722 (N.D. Ohio 2002), demonstrating Steve Miller has been continuously incarcerated since January 2002. Therefore, Defendants contend, Steve Miller cannot have personal knowledge of events that occurred after January 2002 due to his incarceration. Specifically, the Defendants ask the Court to strike his testimony that Jeff Miller operates MBS partnership; that JMS is a sole proprietorship owned by Jeff Miller and formed in 2002 to train and race standardbred horses without Steve Miller; and that Eternal Camnation retired after five years of racing, placing its retirement date in 2003, after Steve Miller was incarcerated; and finally, that Eternal Camnation is being used to produce offspring for sale.

Plaintiff contends Steve Miller's challenged statements were entirely within his personal knowledge. He knows MBS had only two partners, himself and Jeff Miller and since he is

5

incarcerated only Jeff remained a partner and therefore, could be the only person operating MBS. The second statement, that Jeff Miller is the sole proprietor of JMS formed in 2002 to train and race standardbred horses without Steve Miller, was expressly contained in an order entered in Steve Miller's criminal case. Therefore, Steve Miller would be familiar with orders entered in his criminal case. Also, Jeff Miller made essentially the same statement in his own affidavit in this case. Finally, Steve Miller's statement on the Eternal Camnation retirement and use in breeding offspring is based on Steve's awareness that the statements were made by Jeff and supported by documents produced by Jeff Miller in this case regarding these events and are not hearsay because they are statements by a party pursuant to Fed. R. Evid. §801(d)(2).

Defendant further contends there was nothing sinister in Jeff Miller transferring the assets of MBS to JMS. Rather, Jeff acted in concert with counsel and the Assistant United States Attorney working on Steve Miller's criminal case to secure, with court permission, the transfer for the sole purpose of permitting the animals owned by MBS to continue racing and generating income. Under the United States Trotters Association rules, because Steve Miller was under indictment at the time, the MBS horses would not have been permitted to race. Therefore, it was necessary to remove them from MBS control. Had Jeff Miller not transferred the assets of MBS to JMS there would have been "nothing of value for either party."

The Court denies Defendants request to strike the above portions of Steve Miller's affidavit. Even assuming, *arguendo,* the statements were not based on his personal knowledge the Court finds the challenged statements made by Steve Miller are before the Court in evidence from other admissible sources in this case.

6

**The 1989 "Farm" Loan**

Defendants contend FDIC cannot demonstrate unjust enrichment by Jeff and Lori Miller for the $65,000 of allegedly embezzled funds used to purchase 52.85 acres in Paulding County, Ohio. Defendant contends Plaintiffs sole proof is the affidavit testimony of Steve Miller. There is no mention of the $65,000 in the affidavit of the senior manager of the firm who reviewed ODBC's records for FDIC, nor does the manager's affidavit make any conclusions on the $65,000 amount. Defendants contend the affidavit of a convicted felon is subject to impeachment and his testimony alone is not sufficient to prove the elements of unjust enrichment, and the Court is required to draw the inference that he is lying under Fed. R. Evid. 609.

Furthermore, neither Jeff nor Lori Miller knew the funds used to purchase the property were embezzled funds, rather, they believed the funds were a legitimate loan from ODBC. Finally, a reasonable trier of fact could believe Jeff and Lori Miller made payments on the loan before the partnership was formed and those fund were turned over to Steve Miller.

Plaintiff contends Fed. R. Evid. §609 does not require the Court draw the inference that Steve Miller is lying nor does it prevent the Court from considering his testimony. Rather, it allows the Court to admit into evidence a criminal conviction based on dishonesty or false statement. Where, as here, the Defendants offer no evidence that any statements contained in Steve Miller's affidavit are not credible, the Court should treat his testimony like any other affiant.

Plaintiff also contends Defendants Jeff and Lori Miller both admit in their affidavits they received money from ODBC to buy the 52.8 acre farm property. (J.M. aff.¶9, L.M. aff. ¶5).

7

Neither disputes the amount of $65,000, however, both considered the ODBC funds a loan. Lori Miller's affidavit is silent on repayment of the alleged loan. Jeff Miller attests, "[w]e made payments by turning checks over to Steve that we in turn received from a tenant who was purchasing a twenty acre parcel from us under land contract and from other sources. I have no records of these payments." (J.M.aff. ¶9). Both deny any knowledge that the monies received were embezzled funds. Jeff Miller attests that Steve did "all the banking", "handled all things financial", and "kept all the records."

The Court finds Plaintiff has satisfied the elements of unjust enrichment permitting recovery. It is undisputed that Defendants Jeff and Lori Miller received a benefit from ODBC whether or not it was in the form of a loan. Both Jeff and Lori Miller admit receiving funds from ODBC to purchase the property. Nether disputes the amount of $65,000 attested by Steve Miller.

There are no records of the loan nor are there records of payment. Jeff attests he paid Steve but does not attest that any monies were paid to ODBC. Steve Miller attests that no monies were repaid to ODBC on funds embezzled by him. Therefore, the Court finds there is no genuine issue of fact that Defendant Jeff and Lori had knowledge of the benefit from Plaintiff as both acknowledge they received monies from ODBC to purchase the farm. Finally, the uncontroverted testimony shows they have retained the property purchased with monies from ODBC and no monies were repaid to ODBC. It would unjust for Jeff and Lori Miller to retain the value of embezzled funds without repayment to ODBC. Therefore, the Court grants summary judgment to FDIC and against Jeff and Lori Miller in the amount of $65,000 for the farm purchase.

**The 2001 property transaction**

Plaintiff alleges Steve Miller embezzled $128,340.00 which was used to purchase 55.8 acres in Paulding County Ohio. The property was titled to Jeff and Lori Miller.  Defendants again state they thought the funds were proceeds from a loan by ODBC.  Defendants admit to receipt of the funds and admit they have not made payments on this loan.  Defendants Brief in Opposition also states they do "not deny that it would be unjust for them to keep the property without payment." (Brief in opposition pg. 7).

Defendants contend they are not liable for the full purchase price as it does not accurately reflect the measure of damages.  Defendants contend they have not benefitted from their ownership in the property as it has been seized in the criminal prosecution of Steve Miller and is subject to forfeiture.  As Steve and Janet Miller own half of the property which is subject to forfeiture to the U.S. government as a consequence of Steve Miller's criminal prosecution, Jeff and Lori Miller should not be liable for the full purchase price for property of which they will never have use.  Plaintiff's witness Steve Miller admits the property in question is titled to Steve, Janet, Jeff and Lori Miller and two acres are titled to Seth Miller.  Plaintiff has provided no evidence as to how the property is held amongst the title holders.  Therefore, Plaintiff has failed to meet its burden to show that the property owners are jointly and severally liable. [1]

---

[1] The Court notes that the presumption in Ohio where there is no language of survivorship the property is held as a tenancy in common.  See O.R.C. 5302.19 in pertinent part, " if any interest in real property is conveyed or devised to two or more persons, such persons hold title as tenants in common and the joint interest created is a tenancy in common."
"Where a joint tenancy is expressed without words of survivorship, it is construed as a tenancy in common without a right of survivorship." *In re Estate of Shelton,* 154 Ohio App.3d 188, (Ohio App. 11th Dist., 2003.)
"A tenancy in common is a joint interest in property, the only essential element of which is a unity or right of possession. Each tenant in common has a separate and distinct title, and each tenant in common holds this title independently of the other cotenants. Each cotenant's interest can be transferred, devised or encumbered separately and without the consent of the other

"[U]njust enrichment entitles a party only to restitution of the reasonable value of the benefit conferred." *Blue Chip Pavement Maintenance, Inc. v. Ryan's Family Steak Houses, Inc.,* 12th Dist. No. CA2003-09-072, 2004-Ohio-3357, at 18, citing *St. Vincent Med. Ctr. v. Sader,* (1995), 100 Ohio App.3d 379. "The reasonable value of the benefit conferred is the monetary amount expended for the services provided and materials used." *City of Girard v. Leatherworks Partnership,* Case No. No. 2004-T-0010, 2005 WL 2211079 at ¶7 (Ohio App. 11 Dist., September 09, 2005).

The Court finds Defendants Jeff and Lori Miller liable for their interest in the purchased property. Using the $128,340.00 purchase price for 55.8 acres the Court finds the property sold for $2300/per acre. Subtracting Seth Miller's two acre interest and dividing the reminder by two results in a benefit to Jeff and Lori Miller of $61,870.00. Therefore, the Court grants summary judgment for Plaintiff and against Jeff and Lori Miller, finding they were unjustly enriched in the amount of $61,870.00 for their interest in the 55.8 acres purchased with embezzled funds.

### MBS, Jeff Miller and Jeff Miller d/b/a JMS

Plaintiff alleges Steve Miller embezzled $1,904,340.00 which he then funneled to MBS or paid third parties to the benefit of MBS. As evidence, Plaintiff offers the affidavit testimony of Steve Miller, Christopher Boyd, Senior manager of Thompson, Cobb, Bazilio & Associates, PC ("TCBA") an accounting firm hired to do a forensic audit of ODBC's books, and Wayne Green, Team Leader of the Forensic Accounting Unit of FDIC in Dallas, Texas. Christopher Boyd's firm performed a forensic accounting audit of ODBC and prepared a report. The TCBA report concludes MBS received $1,722,223.00 in embezzled funds from ODBC and received the

---

cotenants."*Koster v. Boudreaux,* 11 Ohio App.3d 1, 5 (Ohio App., 6th Dist. 1982).

benefit of $182,117 of embezzled funds used to pay third parties on behalf of MBS. These amounts total $1,904,340. The declaration of Wayne Green supports the figures owed. Both Wayne Green and Christopher Boyd attest that no payment on the funds disbursed to MBS have been returned.

Jeff Miller contends a review of financial records of MBS from 1998-2001 supported by USTA records of revenues earned by MBS from horses, training fees and driver earnings show total earnings of $2,716,346. Based on bank records, Jeff Miller attests MBS had total deposits of $3,519,782.00 for the years in question. Jeff Miller concludes that the total amount that could be assumed as constituting embezzled funds is the difference in the two amounts totaling $803,436.00.

Plaintiff counters Defendants numbers by stating that the $2,716,346 dollar amount includes the winnings by Eternal Camnation Stables, a wholly separate entity from MBS and should not be included in the total MBS winnings. Therefore, the total winnings of MBS were $2,390,029.00, making the difference in deposits and earnings $1,129,753.00. However, Defendant Jeff Miller concedes Steve Miller handled all the accounts and all earnings of MBS were turned over to Steve Miller. Jeff Miller cannot contradict Plaintiff's evidence that no embezzled funds funneled to MBS or used on behalf of MBS were returned or repaid to ODBC. The bank records and affidavits of Steve Miller, Christopher Boyd and Wayne Green all confirm no embezzled funds delivered to MBS on on MBS's behalf were ever returned or repaid to ODBC. Finally, there is uncontroverted testimony the assets of MBS were transferred without consideration to JMS.

However, Plaintiff has offered no evidence that Jeffrey Miller had knowledge of the

11

receipt of a benefit from ODBC. The Court has Jeff Miller's uncontroverted affidavit testimony that he had no knowledge that funds in the MBS account were embezzled. Jeff Miller has offered evidence that MBS generated revenues of over two million dollars from 1998 to 2001. His affidavit further attests he believed MBS generated sufficient revenue to cover all expenses and purchases. Finally, his uncontroverted testimony states Steve Miller did all the bookkeeping for MBS.

Plaintiff's sole argument on the knowledge requirement in an unjust enrichment claim is the statutory imputation of knowledge of one partner to the partnership found in Ohio Revised Code Section 1775.11.

O.R.C. 1775.11 states:

> Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as notice to or knowledge of the partnership, ***except in the case of a fraud on the partnership committed by or with the consent of that partner.*** (Emphasis added).

Plaintiff contends O.R.C. §1775.11 permits the imputation of Steve Miller's knowledge of the unjust enrichment of MBS to the partnership. However, as the emphasized portion of §1775.11 clearly holds, no imputation can be made where there was fraud on the partnership committed by a partner. Here, the fraud was perpetrated by Steve Miller, a partner in MBS. Unlike the loans made to Jeff and Lori Miller of which they admit knowledge, there is no evidence controverting Jeff Miller's testimony that he had no knowledge that funds embezzled from ODBC were placed in MBS accounts or were used to pay MBS expenses. Therefore, the Court finds Plaintiff has failed to satisfy the knowledge requirement of its unjust enrichment claim against MBS for $1,904,340.00. Although Jeff Miller is unable to account for the

$1,129,753.00 difference between the MBS earnings and the total deposits in MBS accounts, the Court finds this does not equate to his or MBS's knowledge of receipt of a benefit from ODBC. Nor has the FDIC demonstrated, beyond mere allegation, that Steve Miller's fraud was committed in the ordinary course of the partnership business or was authorized by the other partners so as to render the partnership liable for Steve Miller's wrongful acts under O.R.C. §1775.08. Summary judgment for Plaintiff on this claim is denied.

Therefore, the Court grants summary judgment for Plaintiff on the funds used in the 1989 farm purchase in the amount of $65,000.00 against Jeff and Lori Miller. The Court grants, in part, Plaintiff's claim against Jeff and Lori Miller for the funds used in the 2001 property purchase in the amount of $61,870.00. Lastly, the Court denies summary judgment on Plaintiff's claim for $1,904,340.00 against MBS and Jeff Miller d/b/a JMS. The case shall proceed to trial as scheduled.

IT IS SO ORDERED.


March 23, 2007             s/Christopher A. Boyko
Date             CHRISTOPHER A. BOYKO
           United States District Judge

This opinion is not for publication.

13

.