**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE** | ) | **CASE NO.3:04CV7586** |
| **CORPORATION** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **JEFFREY L. MILLER, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendants.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Plaintiff Federal Deposit Insurance Corporation's

("FDIC") Motion for Summary Judgment (ECF# 44).  For the following reasons, the Court

grants summary judgment for FDIC and against Jeffrey Miller, Miller Brothers Stables ("MBS")

and Jeffrey Miller Stables ("JMS") in the amount of $1,904,340.00.

**FACTS**

The following facts were recited in the Courts Opinion and Order of March 23, 2007

(ECF#62).  Mark Steven Miller ("Steve Miller") was Chief Executive Officer and Executive

Vice President of Oakwood Deposit Bank Company ("ODBC") from late 1980 until February 1,

1

2002.  On February 1, 2002, ODBC was closed by the Ohio Superintendent of Financial

Institutions and the Federal Deposit Insurance Corporation ("FDIC") was appointed the Receiver

for ODBC.  Steve Miller was indicted for Money Laundering and Embezzlement of ODBC

funds and pled guilty in United States District Court, Northern District of Ohio Case No. 3:02-

CR-0722, on September 5, 2003.  Steve Miller was sentenced to one hundred sixty-eight months

in federal prison and ordered to pay more than $48,000,000.00 in restitution.

Sometime in the early 1990s, Steve and Jeffrey L. Miller ("Jeff Miller") formed MBS, a

general partnership formed under Ohio law, for the purpose of breeding, training and racing

standardbred horses.  Both Steve and Jeff Miller were equal partners.  At the time of the failure

of ODBC, MBS's value exceeded $1,000,000.  Jeff Miller owns a sole proprietorship named Jeff

Miller Stables.  In 2002, the assets of MBS were transferred to JMS.  Plaintiff further alleges the

transfer of MBS assets to JMS was without consideration.

Plaintiff alleges MBS received $1,722,223.00 of embezzled funds from Steve Miller, and

further alleges MBS also received the benefit of $182,117.00 of embezzled funds, paid to third

parties on behalf of MBS, bringing the total amount of embezzled funds used for the benefit of

MBS to $1,904,340.00.

Finally, Plaintiff contends none of the embezzled funds transferred to MBS or used for

the benefit of MBS were ever repaid to ODBC.

Therefore, Plaintiff seeks judgment as a matter of law against MBS and Jeff Miller as a

general partner of MBS in the amount of $1,904,340.00, jointly and severally and against Jeff

Miller d/b/a JMS in an amount to be determined representing the value of the MBS partnership

at the time of the transfer of substantially all of its assets to JMS.

## **STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is

appropriate when no genuine issues of material fact exist and the moving party is entitled to

judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v.*

*United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the

absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the

lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleadings, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe

the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of*

*Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557,

562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6ᵗʰ Circ. 1996). "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).

In *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581 (6th Cir.1992) the Sixth Circuit held, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict ..." quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The Sixth Circuit went on to say, "the 'mere possibility' of a factual dispute is not enough. Rather, in order to defeat summary judgment a plaintiff must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary. Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell* at 581.

### **Unjust Enrichment**

To prevail on a claim for unjust enrichment in Ohio, plaintiff must prove: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit; and (3) the

defendant retained the benefit under circumstances where it would be unjust for him to retain

that benefit without payment.  See *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179,

183.  Also, not only must plaintiff have suffered a loss, but the defendant must receive a gain. *Id.*

## **Procedural History**

On December 29, 2006, Plaintiff filed its Motion for Summary Judgment (ECF #44).  On

March 23, 2007, the Court issued its Opinion and Order, granting, in part, and denying, in part,

Plaintiff's Motion (ECF #62).  The Court found Plaintiff had demonstrated no genuine issue of

fact that ODBC funds were improperly provided to Defendants Jeff and Lori Miller used to

purchase two parcels of land.  The Court also determined Plaintiff had failed to demonstrate Jeff

Miller had knowledge ODBC funds were deposited into MBS accounts and denied summary

judgment against MBS, Jeff Miller and JMS.   On April 2, 2007 Plaintiff filed a Motion to

Alter/Amend the Court's Order (ECF # 64) which was subsequently denied (ECF # 73).

Plaintiff then filed a Motion for Interlocutory Appeal of the Court's denial of summary judgment

(ECF #74).  The Court denied the Motion but issued a clarification of its denial, stating the Court

made no finding whether fraud was committed on the MBS partnership.  On August 28, 2007,

the Court held a telephone status conference with counsel.  As a result of the conference, and

without objection, the Court reopened the denial of summary judgment against MBS, Jeff Miller

and JMS and Ordered the parties to brief the following issues:

> (1) the burdens of proof under Ohio Revised Code §1775.11 and, (2) calculation of
> amount Defendants Jeffrey Miller and MBS were allegedly unjustly enriched.  The Court
> will permit additional evidence to be submitted, via affidavit, including post-summary
> judgment affidavits already submitted, bearing on these issues.

The parties submitted briefs and oral arguments were heard on September 12, 2007. [1]

## LAW AND ANALYSIS

Plaintiff contends it has demonstrated sufficient facts to prove every element of an unjust

enrichment claim against Defendants MBS, Jeff Miller and JMS.  By operation of O.R.C.

1775.11, Steve Miller's knowledge of fraud is imputed to his partner, Jeff Miller.  Although

O.R.C. 1775.11 contains an exception on such imputation when a fraud is perpetrated against the

partnership, Plaintiff contends it is Defendants' burden to demonstrate the exception under Ohio

law.

It is undisputed Steve Miller committed fraud on ODBC and transferred funds unlawfully

from ODBC to MBS.  It is undisputed Jeff Miller and Steve Miller were sole partners in a the

MBS partnership.  It is also undisputed that Jeff and Steve Miller assigned Steve Miller the

bookkeeping and financial responsibilities of MBS while Jeff Miller handled the day to day

operations.  Steve Miller attests to embezzling funds from ODBC and

> "paid them to, or for the benefit of , Miller Brothers Stables approximately $1.7 million
> of the Oakwood embezzled funds was deposited into the Miller Brothers Stables account.
> These funds were then disbursed for the purchase of horses, payment of operating
> expenses (including salaries to Jeff Miller) and taxes, as well as purchase of equipment
> and other assets of Miller Brothers Stables. Additionally, Miller Brothers Stables
> received the benefit of approximately $180,000 embezzled by me from Oakwood and
> paid to third parties on behalf of Miller Brothers Stables. The total of these two amounts
> is more than $1.8 million." (Declaration of Mark Steven Miller Page 3).

Because of the separation of duties at MBS, Jeff Miller is unable to contest that Steve

Miller deposited funds from ODBC into MBS accounts and used ODBC monies to pay debts of

---

[1]  The tortuous route this Court was forced to take in finally resolving the issues of summary judgment could have been avoided if counsel for both sides had presented the Court with factually and legally complete arguments in their initial documents, instead of the piecemeal arguments the Court actually received.

MBS owed third parties.  Plaintiff has also provided affidavit and documentary evidence from its forensic accounting agents proving $1,904,340.00 of ODBC were either deposited into MBS accounts or were used to pay third-party creditors. Therefore, the Court finds MBS and Jeff Miller received a benefit from ODBC under the first element of unjust enrichment. "[U]njust enrichment entitles a party only to restitution of the reasonable value of the benefit conferred." *Blue Chip Pavement Maintenance, Inc. v. Ryan's Family Steak Houses, Inc.,* 12th Dist. No. CA2003-09-072, 2004-Ohio-3357, at  18, citing  *St. Vincent Med. Ctr. v. Sader,* (1995), 100 Ohio App.3d 379.  "The reasonable value of the benefit conferred is the monetary amount expended for the services provided and materials used." *City of Girard v. Leatherworks Partnership,* Case No.  No. 2004-T-0010, 2005 WL 2211079 at ¶7 (Ohio App. 11 Dist., September 09, 2005).Plaintiff offers the affidavit testimony of Steve Miller, Christopher Boyd, (senior manager of Thompson, Cobb, Bazilio & Associates, PC ("TCBA"), an accounting firm hired to do a forensic audit of ODBC's books, and Wayne Green, Team Leader of the Forensic Accounting Unit of FDIC in Dallas, Texas. Christopher Boyd's firm performed a forensic accounting audit of ODBC and prepared a report.  The TCBA report concludes MBS received $1,722,223.00 in embezzled funds from ODBC and received the benefit of $182,117.00 of embezzled funds used to pay third parties on behalf of MBS.  These amounts total $1,904,340.00.  The declaration of Wayne Green supports the figures owed.  Both Wayne Green and Christopher Boyd attest that no payment on the funds disbursed to MBS have been returned to ODBC.

Jeff Miller contends a review of financial records of MBS from 1998-2001, supported by USTA records of revenues earned by MBS from horses, training fees and driver earnings, show

total earnings of $2,716,346.  Based on bank records, Jeff Miller attests MBS had total deposits of $3,519,782.00 for the years in question.  Jeff Miller concludes that the total amount assumed as constituting embezzled funds is the difference in the two amounts totaling $803,436.00.

Plaintiff counters Defendants' numbers by stating that the $2,716,346.00 amount includes the winnings by Eternal Camnation Stables, a wholly separate entity from MBS and should not be included in the total MBS winnings. Therefore, the total winnings of MBS were $2,390,029.00, making the difference in deposits and earnings $1,129,753.00. However, Defendant Jeff Miller concedes Steve Miller handled all the accounts and all earnings of MBS were turned over to Steve Miller.  Jeff Miller cannot contradict Plaintiff's evidence that no embezzled funds funneled to MBS or used on behalf of MBS were returned or repaid to ODBC. The bank records and affidavits of Steve Miller, Christopher Boyd and Wayne Green all confirm no embezzled funds delivered to MBS on on MBS's behalf were ever returned or repaid to ODBC.  Finally, there is uncontroverted testimony the assets of MBS were transferred without consideration to JMS.

The second element of an unjust enrichment claim in Ohio requires Defendant have knowledge of the benefit conferred by Plaintiff.  Plaintiff's Motion for Summary Judgment contends Plaintiff has satisfied the knowledge element of an unjust enrichment claim under Ohio law because Ohio Revised Code Section §1775.11 permits imputation of knowledge of one partner in a partnership to all partners.  O.R.C. §1775.11 states:

> Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as notice to or knowledge of the partnership, ***except in the case of a fraud on the partnership committed by or with the consent of that partner.*** (Emphasis added).

In its original Opinion and Order on Summary Judgment, the Court found Plaintiff had failed to establish Jeff Miller had knowledge of the benefit conferred.   The Court has Jeff Miller's uncontroverted affidavit testimony that he had no knowledge that funds in the MBS account were embezzled.  Jeff Miller has offered evidence that MBS generated revenues of over $2,000,000.00 from 1998 to 2001.  His affidavit further attests he believed MBS generated sufficient revenue to cover all expenses and purchases.  Finally, his uncontroverted testimony states Steve Miller did all the bookkeeping for MBS.  Upon reopening this issue, Plaintiff contends knowledge may be imputed to Jeff Miller as a partner in MBS.  Both parties original summary judgment briefs were silent on the burdens of proof under Ohio law.   While there is a dearth of Ohio case law on O.R.C. 1775.11, it is the opinion of this Court that Ohio courts place the burden of demonstrating an exception or exemption from a statute upon the party seeking to avail itself of the exception.  See  *Carver v. Deerfield Twp.,* 139 Ohio App. 3d 64 (11th Dist. Portage County 2000); *Chiles v. M.C. Capital Corp.,* 95 Ohio App. 3d 485 (10th Dist. Franklin County 1994), dismissed, appeal not allowed, 71 Ohio St. 3d 1404; *State ex rel. Schaefer v. Board of County Commrs. of Montgomery County,* 11 Ohio App. 2d 132 (2d Dist. Montgomery County 1967); *Speidel v. Schaller,* 73 Ohio App. 141, (1st Dist. Clermont County 1943); see also 42 Ohio Jurisprudence 3d, Evidence and Witnesses, § 98.  As the Ohio Supreme Court has expressly stated in *State ex rel. Nat'l Broad Co., Inc., v. City of Cleveland,* 38 Ohio St.3d 79, 83 (1988) "Under Ohio law, a person asserting an exception is required to prove the facts warranting such an exception."

The Court, having reopened summary judgment on this issue, finds it is Defendants' burden on summary judgment to raise an issue of fact that a fraud was committed on the

partnership to avail itself of the protections of the exception. Defendants contend the cases cited by Plaintiff are inapplicable and the principle behind placing the burden on the party asserting the exception are not compelling because Defendants are not personally responsible for the fraudulent acts and requiring an innocent party to bear the burden of proving the exception is not warranted.  Rather, the burden should be on the bank who put the means of doing wrong into the hands of the wrongdoer.

The Court is unpersuaded by Defendants' argument.  Ohio law is clear and does not distinguish between innocent parties.  Therefore, the Court finds it is Defendants' burden to demonstrate the applicability of the exception.  Neither Defendants original Brief in Opposition to Summary Judgment, its Brief for Oral Arguments, nor supporting materials, demonstrate a fraud was perpetrated on the partnership.

In Ohio, to establish a claim for fraud a plaintiff must demonstrate: (1) a representation, or where there is a duty to disclose , concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 169. Civ.R. 9(B) requires particularity in pleading a fraud claim, which means: (1) specific statements claimed to be false; (2) the time and place the statements were made; and (3) which defendant made the false statements. *Pollock v. Kanter,* (1990) 68 Ohio App.3d 673, 681-82 citing *Korodi v. Minot*, (1987), 40 Ohio App.3d 1.

Here, Defendants have failed to plead with any particularity fraud on the partnership and

10

have wholly failed to list, discuss, assert or point this Court to evidence of fraud on the

partnership in any of their responsive briefs.  Therefore, the Court finds Defendants have not

demonstrated a genuine issue of fact that would permit a reasonable juror to find a fraud

committed on the partnership.  Thus, the Court finds Defendants had knowledge of the benefit

conferred, as imputed by operation of O.R.C. §1775.11, because Steve Miller had knowledge of

the benefit conferred on MBS due to his fraud on ODBC and subsequent deposit of funds into

the MBS accounts and payments to third parties for the benefit of ODBC.

The last element of an unjust enrichment claims requires Plaintiff demonstrate the

"defendant retained the benefit under circumstances where it would be unjust for him to retain

that benefit without payment".  Plaintiff contends the uncontested testimony and evidence

clearly demonstrates $1,904,340.00 of ODBC funds were transferred to MBS for the benefit of

MBS.  Jeff Miller cannot say what Steve Miller did with the funds due to the separation of duties

the brothers established when they set up MBS.  Jeff Miller attests there was no formal

partnership agreement between him and Steve Miller when they formed MBS.  Jeff Miller also

attests, "[a]lmost without exception, I turned all checks over to Steve Miller for deposit in the

MBS account." (Jeff Miller aff. at 30.)  Jeff Miller cannot say what Steve Miller did with the

legitimate earnings of MBS and, even if he could, such information would not create an issue of

fact that the monies unlawfully taken from ODBC were used to the benefit of MBS and were

never repaid.  Therefore, it is unjust that Defendant MBS, Jeff Miller and JMS (recipient of the

assets of MBS and, as a sole proprietorship, legally indistinguishable from Jeff Miller) be

permitted to retain the funds unlawfully removed from ODBC.  Banks funds are made up in

large part of deposits of other bank customers.  Many customers of ODBC suffered losses due to

11

Steve Miller's misappropriation of ODBC funds.  It is FDIC's duty as Receiver for ODBC to recover as much of the misappropriated funds as can be traced to restore them to the injured customers and creditors of ODBC, all innocent parties themselves.  Any benefit unlawfully gained by MBS, Jeff Miller and JMS must be returned to prevent a manifest injustice.

Finally, in Ohio, each partner is jointly and severally liable for tortious acts attributed to the partnership and a plaintiff's judgment can be satisfied from any one partner's personal assets. See *Allen v. Niehaus,* No. C-000213, unreported 2001 WL 1589169, (Ohio App. 1st Dist, Dec. 14, 2001).

Therefore, having found Plaintiff has proven all the elements of an unjust enrichment claim under Ohio law and determined Defendants cannot demonstrate any genuine issues of fact on these elements, the Court finds Plaintiff is entitled to summary judgment as a matter of law. The Court grants summary judgment for Plaintiff FDIC and against Defendants MBS, Jeff Miller as a general partner of MBS and JMS jointly and severally in the amount of $1,904,340.00.

IT IS SO ORDERED.

09/21/2007                          S:/ Christopher A. Boyko
Date                                CHRISTOPHER A. BOYKO
                                    United States District Judge